**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR-5733)
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
Elaine Chang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Attorneys for Plaintiff William Alston*
**[Additional Counsel on Signature Page]**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM ALSTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>REGADO BIOSCIENCES, INC., CHRISTOPHER E. COURTS, R. DON ELSEY, B. JEFFERSON CLARK, ANTON GOPKA, P. SHERRILL NEFF, DENNIS PODLESAK, JESSE TREU, RAPHAËL WISNIEWSKI, BMO CAPITAL MARKETS CORP., COWEN AND COMPANY, LLC, CANACCORD GENUITY INC., NEEDHAM & COMPANY, LLC, and WEDBUSH SECURITIES INC.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William Alston ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by REGADO BIOSCIENCES, INC. ("Regado" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Regado; and (c) review of other publicly available information concerning Regado.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired Regado securities: (1) pursuant and/or traceable to the Company's Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with the Company's initial public offering on or about August 21, 2013 (the "IPO" or the "Offering"); and/or (2) on the open market between August 22, 2013 and July 2, 2014, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies under the Securities Act of 1933 (the "Securities Act") and under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Regado is a development stage biopharmaceutical company focused on the discovery and development of novel, first-in-class, actively controllable antithrombotic drug systems for acute and sub-acute cardiovascular indications.  The Company's product candidates consist of a two-component system: an antithrombotic aptamer and its specific active control agent.  The Company's lead product candidate, Revolixys™ Kit, formerly known as REG1, ("Revolixys") is a two-component system consisting of pegnivacogin, an anticoagulant aptamer specifically targeting coagulation Factor IXa, and its complementary oligonucleotide active

control agent, anivamersen.  Revolixys is being developed for use in patients with a wide variety of acute coronary syndromes ("ACS"), undergoing a percutaneous coronary intervention ("PCI"), a hospital-based procedure used to mechanically open or widen obstructed coronary arteries.

3.      On August 27, 2013, Regado completed its IPO of 10,750,000 shares of common stock at a price of $4.00.  Subsequently on September 6, 2013, the Company announced an additional 921,500 shares were sold pursuant to the underwriters' exercise of their over-allotment option).  According to the Company, the Offering raised approximately $41.1 million in net proceeds for the Company, after deducting underwriting discounts of $3.3 million, and other offering expenses of $2.3 million.

4.      In September 2013, Regado commenced its single, open-label, 13,200-subject Phase 3 trial of Revolixys in patients undergoing PCI (excluding ST elevated myocardial infarction, or STEMI), or the REGULATE-PCI trial.

5.      In March 2014, the United States Food and Drug Administration (the "FDA") granted this development program Fast Track designation. The FDA grants the Fast Track designation to facilitate the development, and expedite the review of drugs to treat serious conditions and fill an unmet medical need.  The purpose of the Fast Track designation is to make important new drugs available to patients as quickly as possible.

6.      On July 2, 2014, after the market closed, Regado revealed that the Data Safety Monitoring Board (the "DSMB") had initiated an unplanned review of data from the REGULATE-PCI trial.  The Company further revealed that patient enrollment in the trial had been paused until the DSMB completes its analysis and communicated its recommendations, which are anticipated to occur within the next eight weeks.  According to the Company, the

DSMB will conduct a full analysis of the safety and treatment benefit-risk ratio of all 3,234 patients enrolled to date, with a focus on serious adverse events related to allergic reactions.

7.      On this news, shares of Regado declined $3.95 per share, over 58%, to close on July 3, 2014, at $2.81 per share, on unusually heavy volume.

8.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the administration of Revolixys presented a significant risk of severe allergic reaction; (2) that, as a result, Revolixys was not safe; (3) that this substantially undermined Revolixys' potential to become the new standard of care for anticoagulation therapy for patients undergoing PCI and other cardiovascular procedures; and (4) that, as a result of the foregoing, the Company's positive statements about its business, operations, and prospects, including statements about Revolixys' clinical development and potential to become the standard of care for anticoagulation therapy for patients undergoing PCI and other cardiovascular procedures, were materially false and misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Regado's principal executive offices are located within this Judicial District, and a significant portion of Defendants' actions, and the subsequent damages, took place in this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff William Alston, as set forth in the accompanying certification, incorporated by reference herein, purchased Regado common stock during the Class Period pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Regado is a Delaware corporation with its principal executive offices located at 120 Mountain View Boulevard, Basking Ridge, New Jersey 07920.

16.     Defendant David J. Mazzo ("Mazzo") was, at all relevant times, Chief Executive Officer ("CEO") and a director of Regado, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendant Christopher E. Courts ("Courts") was, at all relevant times, Vice President of Finance and Principal Financial Officer of Regado, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant R. Don Elsey ("Elsey") was, at all relevant times, Chief Financial Officer ("CFO") of Regado since May 5, 2014.

19.     Defendant B. Jefferson Clark ("Clark") was, at all relevant times, a director of Regado and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendant Anton Gopka ("Gopka") was, at all relevant times, a director of Regado and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.     Defendant P. Sherrill Neff ("Neff") was, at all relevant times, a director of Regado and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.     Defendant Dennis Podlesak ("Podlesak") was, at all relevant times, a director of Regado and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.     Defendant Jesse Treu ("Treu") was, at all relevant times, a director of Regado and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.     Defendant Raphaël Wisniewski ("Wisniewski") was, at all relevant times, a director of Regado and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.     Defendants Mazzo, Courts, Elsey, Clark, Gopka, Neff, Podlesak, Treu, and Wisniewski are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Regado's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

26.     Defendants Mazzo, Courts, Clark, Gopka, Neff, Podlesak, Treu, and Wisniewski are collectively referred to hereinafter as the "Section 11 Individual Defendants."

27.     Defendant BMO Capital Markets Corp. ("BMO") served as an underwriter and joint book-running manager of the Company's IPO. In the Offering, BMO agreed to purchase 3,762,500 shares of Regado, exclusive of the over-allotment option.

28.     Defendant Cowen and Company, LLC ("Cowen") served as an underwriter and joint book-running manager of the Company's IPO. In the Offering, Cowen agreed to purchase 3,762,500 shares of Regado, exclusive of the over-allotment option.

29.     Defendant Canaccord Genuity Inc. ("Canaccord") served as an underwriter and joint book-running manager of the Company's IPO.   In the Offering, Canaccord agreed to purchase 1,075,000 shares of Regado, exclusive of the over-allotment option.

30.     Defendant Needham & Company, LLC ("Needham") served as an underwriter to Regado in connection with the Offering.   In the Offering, Needham agreed to purchase 1,075,000 shares of Regado, exclusive of the over-allotment option.

31.     Defendant Wedbush Securities Inc. ("Wedbush") served as an underwriter to Regado in connection with the Offering.   In the Offering, Wedbush agreed to purchase 1,075,000 shares of Regado, exclusive of the over-allotment option.

32.     Defendants BMO, Cowen, Canaccord, Needham, and Wedbush, are collectively referred to hereinafter as the "Underwriter Defendants."

33.     The Company, the Section 11 Individual Defendants, and the Underwriter Defendants are collectively referred to hereinafter as the "Section 11 Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

34.     Regado is a development stage biopharmaceutical company focused on the discovery and development of novel, first-in-class, actively controllable antithrombotic drug systems for acute and sub-acute cardiovascular indications.   The Company's product candidates consist of a two-component system: an antithrombotic aptamer and its specific active control agent.   The Company's lead product candidate, Revolixys, is a two-component system consisting of pegnivacogin, an anticoagulant aptamer specifically targeting coagulation Factor IXa, and its complementary oligonucleotide active control agent, anivamersen.   Revolixys is being developed for use in patients with a wide variety of ACS undergoing a PCI.

35.     On August 21, 2013, the SEC declared effective the Form S-1 that Regado filed on April 29, 2013 and repeatedly amended, until on or about August 21, 2013, when the Company filed with the SEC the final Form S-1/A (collectively, the "Registration Statement") for the IPO.

36.     On August 27, 2013, the Company completed its IPO of 10,750,000 shares of common stock at a price of $4.00.  Subsequently on September 6, 2013, the Company announced an additional 921,500 shares were sold pursuant to the underwriters' exercise of their over-allotment option).  According to the Company, the Offering raised approximately $41.1 million in net proceeds for the Company, after deducting underwriting discounts of $3.3 million, and other offering expenses of $2.3 million.

### Materially False and Misleading
### Statements Issued During the Class Period

37.     The Class Period begins on August 22, 2013.  On or about this day, the Company filed with the SEC its IPO Prospectus (the "Prospectus"), which forms part of the Registration Statement.  Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

38.     With respect to the potential for Revolixys to become the new standard of care for anticoagulation therapy for patients undergoing PCI and other cardiovascular procedures, the Registration Statement stated, in relevant part:

> We believe that REG1 has the potential to become the standard of care for anticoagulation therapy for patients undergoing PCI and other cardiovascular procedures because it gives the physician precise, on-demand control over anticoagulation levels. REG1 is the first and only anticoagulant to demonstrate a reduction in both ischemic and major bleeding events in a clinical trial for PCI. In our clinical trials, REG1 demonstrated a rapid and predictable anticoagulant effect that was precisely modulated or completely reversible in real time. In our

randomized, partially blinded, dose-ranging Phase 2b trial involving 640 subjects, or the RADAR trial, when compared to standard of care heparin, REG1 demonstrated both a rapid and predictable anticoagulant effect and ability to precisely modulate or eliminate that effect in real time. REG1 also demonstrated the following important clinical and pharmacoeconomic benefits:

- an approximate 66.0% reduction in ischemic events;

- a reduction of up to 60.0% in major bleeding events;

- a substantial reduction in time from catheterization to catheter sheath removal from a median of 3.8 hours to a median of one hour;

- a substantial reduction in time of completion of the PCI procedure to catheter sheath removal from a median of three hours to a median of 24 minutes; and

- a substantial reduction in the time patients were required to remain still following catheter sheath removal from a median of 5.7 hours to a median of 2.8 hours.

39.     With respect to the Phase 2b clinical trial of Revolixys completed in 2011 (the "RADAR" trial), the Registration Statement, in relevant part, stated:

Late in the trial, three REG1 subjects experienced severe allergic events. These events occurred 3 to 20 minutes after administration of pegnivacogin and ranged from a subject with a mild skin reaction to one subject who needed extended hemodynamic support. Based on a blinded assessment of bleeding and ischemic events at that time, it was determined that a sufficient number of endpoint events had occurred to meet the objectives of the trial and the trial was deemed complete. Following the occurrence of the allergic events, a detailed analysis of possible causes was performed. We determined that all three subjects were experiencing activation of their immunological system prior to receiving REG1 treatment and had a history of allergic reactions. We also determined that the REG1 used in these patients conformed to our specifications, was not contaminated, mishandled or stored incorrectly and that no changes to the formulation had occurred. Based on non-human primate studies, we concluded that there was no clinical or biomarker evidence of intravascular immune pathway activation. We also re-examined the complete REG1 clinical database and found no evidence of serious allergic reactions within the remainder of the REG1 development program. Following completion of our investigations and submission of a risk minimization action plan, the FDA and the EMA agreed that we could proceed to a Phase 3 trial and that no additional exclusion criteria, and no special dosing, pre-treatment or pre-screening requirements were necessary. Additionally, in REGULATE-PCI investigators will receive training on the identification and proper treatment of

allergic reactions and blood samples from all subjects will be collected and stored for future reference in the event they are needed for analysis.

40.    During the Phase 3 REGULATE-PCI trial, the DSMB had three planned interim analyses.  According to the Registration Statement, the first interim analysis was to occur after the enrollment of 1,000 subjects and was expected to occur by the beginning of the second quarter of 2014.  Assuming satisfactory review, the trial enrollment would broaden and the DSMB would conduct a second interim analysis after 25% of the subjects were enrolled, which was expected to occur by the end of the third quarter of 2014.  Based on this safety review, the DSMB would recommend the continuation or discontinuation of the REGULATE-PCI trial.  If satisfactory, the trial would continue until the final interim analysis, which would have occurred after 50% of the subjects were enrolled.

41.    On September 17, 2013, the Company issued a press release entitled, "Regado Biosciences, Inc. Enrolls First Patient in Phase 3 Trial of REG1."  Therein, the Company, in relevant part, stated:

**"REGULATE-PCI" to Study REG1 in Patients Undergoing Percutaneous Coronary Intervention**

Regado Biosciences, Inc. (Nasdaq: RGDO), a biopharmaceutical company focused on the discovery and development of novel, first-in-class, actively controllable antithrombotic drug systems for acute and sub-acute cardiovascular indications, today announced the enrollment of the first patient in its REGULATE-PCI clinical trial.  REGULATE-PCI is a Phase 3, PROBE design (Prospective, Randomized, Open-label, Blinded-Endpoint) superiority study comparing the effects of Regado's REG1 to bivalirudin in patients undergoing percutaneous coronary intervention (PCI) electively or for the treatment of unstable angina (UA) or non-ST elevated myocardial infarction (N-STEMI).  REGULATE-PCI, if successful, will serve as the basis for product registration applications throughout the world.

Led by co-principal investigators, Drs. John H. Alexander of Duke University Medical Center, A. Michael Lincoff of The Cleveland Clinic and Roxana Mehran of Mount Sinai School of Medicine, REGULATE-PCI is expected to enroll 13,200 patients at approximately 500 investigational sites worldwide.  The

primary endpoint of the trial is efficacy compared to bivalirudin based on a composite of death, nonfatal myocardial infarction (MI), nonfatal stroke and urgent target lesion revascularization through day three. The principal secondary endpoint is safety compared to bivalirudin as measured by major bleeding events through day three. The trial is powered to show superiority in efficacy and non-inferiority in safety against bivalirudin. If successful, REGULATE-PCI will become the cornerstone of Regado's international new drug applications, expected to be filed in early 2016. The first of three key interim analyses in the trial will occur after enrollment of the first 1,000 patients and is expected to occur during the second quarter of 2014.

David J. Mazzo, Ph.D., President and CEO of Regado Biosciences, explained, "The initiation of our Phase 3 clinical trial is a momentous occasion for Regado, our investors and the cardiovascular community as a whole. Not only does REGULATE-PCI herald a new age in acute care cardiovascular trial design, but it is unique among other recent PCI trials in its aim to demonstrate superiority of a new therapy. If REG1 achieves the successful results we expect, this trial could pave the way for REG1 to become the new standard of care for anticoagulant use in PCI treatments by providing better outcomes for patients, optimized control for physicians and pharmacoeconomic benefits for payers."

Steven L. Zelenkofske, D.O., F.A.C.C., Senior Vice President, Clinical and Medical Affairs and Chief Medical Officer, remarked, "I am very proud of the entire team at Regado who, working with our world renowned medical advisors, as well as the numerous investigators and trial sites, have prepared and launched a trial of this magnitude and scope with the aim of demonstrating that REG1 can provide the first major improvement in efficacy in over a decade among anticoagulants used in PCI."

Dr. Mazzo concluded, "We believe that there is an immediate need for a PCI anticoagulant therapy that reduces ischemic complications and major bleeding rates while contributing to overall reductions in procedure time and cost of care. We believe that REG1 will demonstrate that it can satisfy this need and, in so doing, become the anticoagulant of choice in patients undergoing PCI."

42.    On November 7, 2013 the Company issued a press release entitled, "Regado Biosciences, Inc. Announces Third Quarter 2013 Results." Therein, the Company, in relevant part, stated:

Today's third quarter 2013 update marks Regado's first financial reporting period as a publicly traded company following its initial public offering (IPO) effective on August 21, 2013. Highlights from the quarter include:

- **Successful IPO and Exercise of Over-Allotment Option:** On August 27, 2013, Regado consummated its initial public offering of 10,750,000 shares of its common stock at a price to the public of $4.00 per share. Subsequently, on September 6, 2013, Regado announced the exercise of the over-allotment option granted to the underwriters to purchase 921,500 additional shares of common stock at a public offering price of $4.00 per share. Inclusive of the underwriters' overallotment, Regado received net proceeds of $41.1 million after deducting underwriting discounts of $3.3 million and offering costs approximated at $2.3 million.

- **Initiation of REGULATE-PCI Phase 3 Clinical Study of REG1:** On September 17, 2013, Regado announced the enrollment of the first patient in its REGULATE-PCI clinical trial. The REGULATE-PCI clinical trial is a Phase 3, PROBE design (Prospective, Randomized, Open-label, Blinded-Endpoint) superiority study comparing the effects of Regado's REG1 to bivalirudin in patients undergoing percutaneous coronary intervention (PCI) electively or for the treatment of unstable angina (UA) or non-ST elevated myocardial infarction (N-STEMI). The REGULATE-PCI trial is expected to enroll 13,200 patients at approximately 500 investigational sites worldwide, and, if successful, the trial will serve as the basis for product registration applications throughout the world.

- **Appointment of Michael Mendelsohn, M.D. to Board of Directors:** On November 5, 2013, Regado appointed Michael E. Mendelsohn, M.D., to the Company's Board of Directors, adding a world-renowned leader in cardiovascular research and the former Global Head of Cardiovascular Diseases for Merck & Co. to its leadership team.

David J. Mazzo, Ph.D., President and CEO of Regado Biosciences, commented, "The third quarter of 2013 was a truly transformational period for Regado as we accomplished two significant milestones that will have a long-lasting, positive impact on our company – our successful initial public offering and the initiation of our global REGULATE-PCI Phase 3 clinical trial. Looking ahead, we are intently focused on the advancement of our REGULATE-PCI clinical trial as we target the enrollment of the 1000th patient during the second quarter of 2014. If REG1 achieves the successful results we expect, this trial could pave the way for REG1 to become the first major improvement in efficacy in more than a decade among anticoagulants used in PCI, potentially providing a new standard of care for anticoagulant use in PCI treatments."

**THIRD QUARTER 2013 FINANCIAL SUMMARY**

Regado's net loss for the third quarter ended September 30, 2013 was $11.4 million or a net loss of $1.43 per share, as compared to a net loss of $2.7 million or a net loss of $12.28 per share for the corresponding period in 2012, on both a basic and fully diluted basis.

Cash and cash equivalents at September 30, 2013 totaled $43.5 million compared to $14.8 million at December 31, 2012. Cash and cash equivalents at September 30, 2013 comprise of proceeds from the Company's initial public offering and remaining proceeds from its Series E financing in December 2012.

43.     On November 8, 2013, Regado filed its Quarterly Report with the SEC on Form 10-Q for the 2013 fiscal third quarter.  The Company's Form 10-Q was signed by Defendants Mazzo and Courts, and reaffirmed the Company's financial results previously announced on November 7, 2013.

44.     On March 10, 2014, the Company issued a press release entitled, "FDA Designates Regado's REG1 in PCI as a Fast Track Development Program."  Therein, the Company, in relevant part, stated:

> **Enrollment in the Phase 3 REGULATE-PCI Trial is Ongoing for Acute Coronary Syndrome Patients Undergoing Percutaneous Coronary Intervention**
>
> Regado Biosciences, Inc. (Nasdaq: RGDO), a biopharmaceutical company focused on the development of actively controllable therapeutics, today announced that the United States Food and Drug Administration (FDA) has designated REG1 for anticoagulant therapy to be used in patients with coronary artery disease during percutaneous coronary interventions (PCI) as a Fast Track development program. The FDA's Fast Track process is designed to facilitate the development and expedite the review of drugs to treat serious conditions that fill an unmet medical need, with the overall goal of getting new drugs to patients earlier.
>
> "We are pleased that the FDA has designated REG1 as a Fast Track development program in our lead indication of PCI," said David J. Mazzo, Ph.D., Chief Executive Officer of Regado Biosciences. "We continue to believe that REG1 has the potential to become a new standard of care for anticoagulation in interventional cardiology. We intend to continue our Phase 3 REGULATE-PCI study with the goal of bringing this important new therapy to patients as quickly as possible."
>
> Robert M. Califf, M.D., Professor of Medicine at the Duke University Medical Center in Durham, N.C., Chairman of Regado Biosciences' Medical Advisory Board and recognized thought leader, said, "If REGULATE-PCI meets its primary endpoints, REG1 will offer a clinically meaningful advantage versus currently available therapies by enabling interventional cardiologists to actively

control anticoagulation during PCI. Fast Track designation is an important step in the process of demonstrating REG1's promise to improve outcomes for patients."

REG1 is a two-component system consisting of pegnivacogin, an anticoagulant aptamer specifically targeting coagulation Factor IXa, and its complementary oligonucleotide active control agent, anivamersen, for use during revascularization procedures such as PCI. These procedures put patients at risk for therapy-related ischemic and bleeding complications. REG1 is designed to improve patient outcomes, enable physicians to have direct therapeutic control and provide efficiencies leading to significant pharmacoeconomic benefits. REG1 is currently being evaluated in the Phase 3 REGULATE-PCI trial.

45.    On March 12, 2014, the Company issued a press release entitled, "Regado Biosciences Announces Year-End 2013 Financial Results and Corporate Highlights."  Therein, the Company, in relevant part, stated:

Regado Biosciences, Inc. (Nasdaq: RGDO), a biopharmaceutical company focused on the late-stage, Phase 3 clinical development of its first-in-class, actively controllable antithrombotic drug system, REG1, today announced its year-end 2013 corporate highlights and financial results. A conference call and webcast to discuss the results will be held March 13 at 8:30 a.m. EDT.

David J. Mazzo, Ph.D., Chief Executive Officer of Regado Biosciences, commented, "Last year was a remarkable and truly formative year for Regado. We evolved from a private company to a publicly traded company, grew our executive team, board of directors and medical advisory board by adding new expertise and capacity, and initiated our global REGULATE-PCI Phase 3 clinical trial. Enrollment is on track, and we are planning for the first interim analysis to take place during April of this year, as expected. Given the groundbreaking results from our Phase 2b study, we believe that the REGULATE-PCI (Phase 3) trial has a high probability of clinical and regulatory success and that REG1 could provide a new standard of care for patients undergoing PCI therapy."

**YEAR-END 2013 FINANCIAL SUMMARY**

Cash and cash equivalents at Dec. 31, 2013, totaled $30.7 million compared to $14.8 million at Dec. 31, 2012.  In addition, on Jan. 31, 2014, the Company raised an additional $20 million of gross proceeds in a private placement of common stock to new and existing investors. The company believes that the net proceeds of this offering, together with its existing working capital, will be sufficient to fund the REGULATE-PCI trial through the second interim analysis, which is expected to occur by the end of the third quarter of 2014.

Regado's net loss for the year ended Dec. 31, 2013, was $34.4 million or a net loss of $4.59 per share as compared to a net loss of $13.1 million or a net loss of $59.03 per share for the corresponding period in 2012 on both a basic and fully diluted basis.

**CORPORATE HIGHLIGHTS**

- **Successfully completed IPO and listing on the NASDAQ Capital Market:** In late summer, Regado completed an IPO which resulted in net proceeds to the Company of approximately $41.1 million and began trading on the NASDAQ Capital Market on Aug. 22, 2013, under the trading symbol "RGDO".

- **First patient enrolled in REGULATE-PCI Phase 3 clinical study of REG1:** In September, Regado initiated its REGULATE-PCI clinical trial, a Phase 3 superiority study to compare the effects of Regado's REG1 to bivalirudin. This trial is expected to enroll 13,200 patients with enrollment completion targeted for the fall of 2015 and top-line data planned for the end of 2015.

- **Strengthened Board of Directors:** In the fourth quarter, Michael Mendelsohn, M.D., and Pierre Legault were appointed to the company's board of directors. Dr. Mendelsohn contributes significant cardiovascular therapeutics expertise, large pharmaceutical experience and academic achievement to the Company. Previously, Dr. Mendelsohn served as Senior Vice President and Global Franchise Head for Cardiovascular Diseases at Merck & Co. Prior to joining Merck in 2010, Dr. Mendelsohn spent 17 years at Tufts Medical Center, where he served as the first-ever Chief Scientific Officer and the Executive Director of the center's Molecular Cardiology Research Institute. Mr. Pierre Legault brings broad executive management experience, including 30 years of executing creative financing strategies, driving corporate development and constructing value-driving transactions for international biotechnology and pharmaceutical companies. Additionally, Mr. Legault has significant experience serving on boards of directors and audit committees of public companies. Mr. Legault is currently the Chief Executive Officer of NephroGenex, a late-stage, publicly traded biotech company, where he was previously Executive Chairman.

- **Addition to the executive leadership team:** In December, Regado appointed Michael A. Metzger as President and Chief Operating Officer to oversee corporate and business development strategy as well as other key business functions. Mr. Metzger was previously Executive Vice President and Chief Operating Officer at Mersana Therapeutics and has nearly 20 years of experience within the life sciences sector.

- **Notable interventional cardiologist joined medical advisory board:** Deepak L. Bhatt, M.D., the Executive Director of Interventional Cardiovascular Programs at Brigham and Women's Hospital Heart and Vascular Center, was appointed to the medical advisory board. Dr. Bhatt

has expertise in cardiovascular intervention and years of experience leading international cardiovascular clinical trials.

- **Additional Phase 2b RADAR results published:** Further data from the Company's completed RADAR trial, demonstrating the safety of early sheath removal in patients treated with REG1, were published in the Journal of Invasive Cardiology.

- **Broadened the patent portfolio protecting the core technology platform:** Regado received the issuance of U.S. patent 8,586,524, extending the patent coverage beyond nucleic acid-based modulators to now include peptide-, polypeptide- and protein-based control agents for the modulation of aptamer-based anticoagulants.

- **IND acceptance for REG2:** On Dec. 10, 2013, the U.S. Food and Drug Administration accepted the investigational new drug (IND) application for REG2, for which the Company plans to conduct additional clinical testing in sub-acute venous thrombosis indications in the future.

- **REG1 designated by the FDA as a Fast Track Development Program:** In March of 2014, REG1 for use in PCI was given Fast Track designation by the FDA.  The FDA's Fast Track process is designed to facilitate the development and expedite the review of drugs to treat serious conditions that fill an unmet medical need, with the overall goal of getting new drugs to patients earlier.

Since initiation of the REGULATE-PCI study in September 2013 in the enzyme negative PCI patient population, the company has continued to enroll patients as planned. During 2014, a total of three interim analyses will be conducted based on the achievement of specific clinical enrollment milestones (1,000 pts., 3,300 pts. and 6,600 pts., respectively). After the enrollment of 1,000 patients, the Data Safety Monitoring Board (DSMB) will perform a general safety evaluation and, barring any identified safety issues, can authorize opening enrollment to all (enzyme negative and enzyme positive) PCI patients, excluding STEMI patients. This initial interim analysis is expected to take place early in the second quarter of 2014. The DSMB will also conduct analyses when 25% and 50% of patients have been enrolled in the third and fourth quarters of 2014, respectively.

46.    On March 12, 2014, Regado filed its Annual Report with the SEC on Form 10-K for the 2013 fiscal year.  The Company's Form 10-K was signed by Defendant Mazzo, and reaffirmed the Company's financial results previously announced that day.

47.    On April 2, 2014, the Company issued a press release entitled, "Regado Achieves 1,000-Patient Milestone in Phase 3 Trial of REG1."  Therein, the Company, in relevant part, stated:

**REGULATE-PCI Opened to "All Comers" PCI Population**

Regado Biosciences, Inc. (Nasdaq: RGDO), a biopharmaceutical company leading the development of actively controllable therapeutics for acute care cardiovascular indications, today announced that after achieving the 1,000-patient enrollment milestone, enrollment in the REGULATE-PCI trial has been extended to non ST-elevated myocardial infarction (N-STEMI) patients to include the planned "all comers" percutaneous coronary intervention (PCI) patient population described in the trial protocol. REGULATE-PCI is Regado's Phase 3 trial comparing REG1 to bivalirudin for superiority in reducing ischemic events in patients undergoing PCI, excluding those with ST-elevated myocardial infarction (STEMI). This development program was recently granted Fast Track designation by the FDA.

"I am pleased with the enthusiasm that the investigator community is showing for REG1 as evidenced by the rapid enrollment rate of the trial," said Roxana Mehran, MD, Co-Principal Investigator on the REGULATE-PCI trial and Professor of Medicine at the Icahn School of Medicine at Mount Sinai. "Using Regado's unique aptamer technology, REG1 offers controlled anticoagulation and rapid reversal for the practitioner. REG1 has the potential to become the new standard of care in PCI and possibly other acute care cardiovascular indications. It promises to be the first and only anticoagulant that reduces ischemic complications without an increase in bleeding while also reducing healthcare costs associated with the procedure."

REGULATE-PCI, as originally planned, began with enrollment of unstable angina (UA) and elective patients undergoing PCI and, with the addition of N-STEMI patients undergoing PCI, is now enrolling the "all comers" PCI population as defined in the trial protocol and according to the previously projected timelines. REGULATE-PCI, if successful, will serve as the basis for product registration applications throughout the world.

48.     On May 13, 2014, Regado filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal first quarter.  The Company's Form 10-Q was signed by Defendants Mazzo and Elsey.

49.     On May 14, 2014, the Company issued a press release entitled, "Regado Biosciences Announces First Quarter 2014 Financial Results and Corporate Highlights." Therein, the Company, in relevant part, stated:

Regado Biosciences, Inc. (Nasdaq: RGDO), a biopharmaceutical company focused on the late-stage, Phase 3 clinical development of the Revolixys™ Kit

(previously known as REG1), its first-in-class, actively controllable antithrombotic drug system, today announced its first quarter 2014 corporate highlights and financial results. A conference call and webcast to discuss the results will be held, May 14, 2014, at 8:30 a.m. EDT.

"As announced in April, we were very pleased to reach the first enrollment milestone in our global REGULATE-PCI trial, which allowed us to expand our efforts and enroll 'all comers' into the trial, and include NSTEMI patients. The study continues to progress as planned, and we expect to continue to meet our planned enrollment milestones later this year," David J. Mazzo, Ph.D., Chief Executive Officer of Regado Biosciences, commented. "We believe that Revolixys will be a category-leading anticoagulant that has the potential to improve patient outcomes by providing direct therapeutic control to physicians in clinical settings. By designating Revolixys as a Fast Track Development Program, I believe that the FDA recognizes that there is a significant need for this treatment option."

## FIRST QUARTER 2014 FINANCIAL SUMMARY

Cash and cash equivalents at March 31, 2014, totaled $34.8 million compared to $10.8 million at March 31, 2013.  In addition, on April 16, 2014, the Company successfully closed a public offering of approximately $60 million of common stock with new and existing investors. Regado believes that the expected net proceeds of this offering, together with its existing working capital, will be sufficient to fund the REGULATE-PCI trial and operations through Q1 2015.

Regado's net loss for the quarter ended March 31, 2014, was $30.7 million or a net loss of $1.30 per share as compared to a net loss of $3.3 million or a net loss of $14.87 per share for the corresponding period in 2013 on both a basic and fully diluted basis.

## CORPORATE HIGHLIGHTS

- **Revolixys Phase 3 trial reached 1,000 patient milestone:** On April 2, 2014, Regado announced that 1,000 patients had been enrolled in the REGULATE-PCI trial, and enrollment was extended to include the planned "all comers" percutaneous coronary intervention (PCI) patient population described in the trial protocol.
- **Successfully raised approximately $80 million through equity offerings:** In two separate transactions, the Company successfully raised a total of approximately $80 million. This level of funding is projected to support the REGULATE-PCI trial and operations through Q1 2015.
- **Revolixys designated by the FDA as a Fast Track Development Program:** In March of 2014, Revolixys for use in PCI was given Fast Track designation by the FDA. The FDA's Fast Track process is designed to facilitate the development and expedite the review of drugs to treat

serious conditions that fill an unmet medical need, with the overall goal of getting new drugs to patients earlier.

- **Broadened the patent portfolio protecting the core technology platform:** Regado received the issuance of U.S. patent 8,586,524, extending the patent coverage beyond nucleic acid-based modulators to now include peptide-, polypeptide- and protein-based control agents for the modulation of aptamer-based anticoagulants.

- **IND acceptance for REG2:** The U.S. Food and Drug Administration accepted the investigational new drug (IND) application for REG2, for which the Company plans to conduct additional clinical testing in sub-acute venous thrombosis indications in the future.

50.     The statements contained in ¶¶37-49 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the administration of Revolixys presented a significant risk of severe allergic reaction; (2) that, as a result, Revolixys was not safe; (3) that this substantially undermined Revolixys' potential to become the new standard of care for anticoagulation therapy for patients undergoing PCI and other cardiovascular procedures; and (4) that, as a result of the foregoing, the Company's positive statements about its business, operations, and prospects, including statements about Revolixys' clinical development and potential to become the standard of care for anticoagulation therapy for patients undergoing PCI and other cardiovascular procedures, were materially false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

51.     On July 2, 2014, after the market close, Regado issued a press release entitled, "Regado Announces Initiation of DSMB Review of REGULATE-PCI."  Therein, the Company, in relevant part, stated:

> Regado Biosciences, Inc. (Nasdaq: RGDO), a biopharmaceutical company focused on the Phase 3 clinical development of Revolixys™ Kit (previously known as REG1), its first-in-class, actively controllable antithrombotic drug system, today announced that the Data Safety Monitoring Board (DSMB) has initiated an unplanned review of data from the REGULATE-PCI trial. Patient enrollment has been paused until the DSMB has completed its analysis and

communicated its recommendations, which are anticipated within the next eight weeks. The DSMB will conduct a full analysis of safety and treatment benefit-risk ratio of all patients enrolled to date (3234) with a focus on serious adverse events related to allergic reactions. Regado and the trial's academic leadership have been and will remain blinded to study results during this period.

52.     On this news, shares of Regado declined $3.95 per share, over 58%, to close on July 3, 2014, at $2.81 per share, on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired Regado securities: (1) pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's IPO on or about August 21, 2013, seeking to pursue remedies under the Securities Act; and/or (2) on the open market between August 22, 2013 and July 2, 2014, inclusive, seeking to pursue remedies under the Exchange Act; and were damaged thereby (collectively, the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Regado's securities were actively traded on the Nasdaq Stock Market (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Regado shares were traded publicly during the Class Period on the NASDAQ. As of May 13, 2014, Regado had 33,609,212 shares of common stock outstanding. Record owners and other

members of the Class may be identified from records maintained by Regado or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Regado; and

(c)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

59.     The market for Regado's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Regado's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Regado's securities relying upon the integrity of the market price of the Company's securities and market information relating to Regado, and have been damaged thereby.

60.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Regado's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Regado's business, operations, and prospects as alleged herein.

61.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Regado's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant

times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

62.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

63.     During the Class Period, Plaintiff and the Class purchased Regado's securities at artificially inflated prices and were damaged thereby.   The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

64.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Regado, his/her control over, and/or receipt and/or modification of Regado's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Regado, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

65.     The market for Regado's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Regado's securities traded at artificially inflated prices during the Class Period.   On March 18, 2014, the Company's stock closed at a Class Period high of $13.50 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Regado's securities and market information relating to Regado, and have been damaged thereby.

66.     During the Class Period, the artificial inflation of Regado's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Regado's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Regado and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

67.     At all relevant times, the market for Regado's securities was an efficient market for the following reasons, among others:

(a)     Regado stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Regado filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Regado regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Regado was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

68.     As a result of the foregoing, the market for Regado's securities promptly digested current information regarding Regado from all publicly available sources and reflected such information in Regado's stock price. Under these circumstances, all purchasers of Regado's securities during the Class Period suffered similar injury through their purchase of Regado's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

69.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Regado who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 11 of The Securities Act
### (Against the Section 11 Defendants)

70.    Plaintiff repeats and realleges each and every allegation set forth in ¶¶15-52, except any allegation of fraud, recklessness or intentional misconduct.

71.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Section 11 Defendants.

72.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

73.    Regado is the registrant for the IPO.  The Section 11 Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

74.    As issuer of the shares, Regado is strictly liable to Plaintiff and the Class for the misstatements and omissions.

75.    None of the Section 11 Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

76.     By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

77.     Plaintiff acquired Regado shares pursuant and/or traceable to the Registration Statement for the IPO.

78.     Plaintiff and the Class have sustained damages.  The value of Regado common stock has declined substantially subsequent to and due to the Section 11 Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of The Securities Act
### (Against the Section 11 Individual Defendants)

79.     Plaintiff repeats and realleges each and every allegation set forth in ¶¶15-52, except any allegation of fraud, recklessness or intentional misconduct.

80.     This count is asserted against the Section 11 Individual Defendants and is based upon Section 15 of the Securities Act.

81.     The Section 11 Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Regado within the meaning of Section 15 of the Securities Act.  The Section 11 Individual Defendants had the power and influence and exercised the same to cause Regado to engage in the acts described herein.

82.     The Section 11 Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

83.     By virtue of the conduct alleged herein, the Section 11 Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**THIRD CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against the Company and the Individual Defendants**

84.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

85.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Regado's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

86.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Regado's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

87.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Regado's financial well-being and prospects, as specified herein.

88.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a

course of conduct as alleged herein in an effort to assure investors of Regado's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Regado and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

89.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

90.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Regado's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

91.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Regado's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Regado's securities during the Class Period at artificially high prices and were damaged thereby.

92.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Regado was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Regado securities,

or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

93.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

94.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**FOURTH CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

95.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

96.     The Individual Defendants acted as controlling persons of Regado within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

97.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

98.     As set forth above, Regado and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


DATED:  July 11, 2014


By: /s/Laurence Rosen

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (LR-5733)
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
Elaine Chang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff William Alston*